## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 30, 2023

_Gonzàlez, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 30, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 101270-5 |
|  | ) |  |
| A.M.F., | ) | En Banc |
|  | ) |  |
| a minor child. | ) |  |
|  | ) | Filed: March 30, 2023 |

GONZÁLEZ, C.J.—This case involves three important principles: the State's obligation to protect an at-risk child, the parent's right to parent their child, and the constitutional prohibition on coercing testimony in criminal cases.

Under our constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. To give force to this constitutional principle, no person may be compelled to testify in any situation where their testimony might be used against them in a criminal prosecution, and the judge or jury in a criminal case may not draw a negative inference from the defendant's silence.

In contrast, the trier of fact in a civil case generally may choose to draw a negative inference from the assertion of the right to remain silent. But while a negative inference may be drawn, the State may not impose an adverse

*In re Dependency of A.M.F.*, No. 101270-5

consequence on a person based solely on their assertion of their right to remain silent, even in a civil matter.

In this case, a child was removed from his mother and placed with his grandparents out of concern that she could not care for him. Years later, the State sought to terminate that mother's parental rights. On advice of counsel, she declined to answer questions related to her recent drug use. The trial judge chose to draw a negative inference from her assertion of that right. We must decide whether, under the Fifth Amendment, that was permissible. We stress that such a negative inference must not be the only evidence supporting termination. In this case, however, it was not error for the court to draw a negative inference from the mother's refusal to answer specific questions about her drug use. We affirm the courts below and remand for any further proceedings necessary to carry out this decision.

## FACTS

YR is the biological mother of AMF. AMF was born with methamphetamines and opiates in his system. Hospital staff referred AMF to the Department of Children, Youth, and Family Services. Shortly afterward, YR's family met with a social worker and expressed significant concerns about her ability to care for her son due to ongoing, untreated substance use; her mental health; and her long-term struggles with housing instability. After AMF finished

2

*In re Dependency of A.M.F.*, No. 101270-5

treatment for withdrawal, YR's parents took him into their home, where he has lived his whole life. The record suggests his grandparents wish to adopt him. Meanwhile, YR's struggles, particularly with substance abuse, continued through the dependency.

When AMF was 19 months old, the State petitioned to terminate YR's parental rights. At the time of trial, it appears YR was facing criminal charges. The nature of those charges is not revealed in the record before us. YR testified at trial but, on the advice of counsel, did not answer questions about the last time she had used illegal drugs. The trial court agreed YR was entitled to exercise the right to remain silent, but it warned her that it might draw a negative inference from her silence.

The court did draw that negative inference, based on that and the other evidence presented; found the State had met all the statutory factors; and granted the termination petition. The Court of Appeals affirmed and our commissioner granted review. The King County Department of Public Defense, Washington Defender Association, the American Civil Liberties Union of Washington, and the Washington State Office of Public Defense submitted an amici brief in support of YR.

*In re Dependency of A.M.F.*, No. 101270-5

ANALYSIS

1. Right To Remain Silent

Whether a trial judge may draw a negative inference from a parent's assertion of the right to remain silent in a parental rights termination trial is a legal question we review de novo. *See Tomlinson v. Puget Sound Freight Lines, Inc.*, 166 Wn.2d 105, 109, 206 P.3d 657 (2009) (citing *Ingram v. Dep't of Licensing*, 162 Wn.2d 514, 522, 173 P.3d 259 (2007)). We review challenged findings of fact for substantial evidence. *Id.* (citing *Ingram*, 162 Wn.2d at 522).

Under both our State and federal constitutions, "[n]o person shall be compelled in any criminal case to give evidence against himself." WASH. CONST. art. I, § 9; U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."). These constitutional protections are a response, in part, to prerevolutionary British investigatory techniques where people were made to be witnesses against themselves at risk of torture or damnation. *See generally Miranda v. Arizona*, 384 U.S. 436, 442-43, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (quoting *Brown v. Walker*, 161 U.S. 591, 596-97, 16 S. Ct. 644, 40 L. Ed. 819 (1896)); Katharine B. Hazlett, *The Nineteenth Century Origins of the Fifth Amendment Privilege Against Self-Incrimination*, 42 AM. J. OF LEGAL HIST. 235, 237-38 (1998); Robert Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1083-84 (1982).

*In re Dependency of A.M.F.*, No. 101270-5

The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973). The State does not dispute that under these principles and given the pending criminal charges, YR had the right not to answer questions about her current drug use.

The trier of fact in a criminal case may not use the defendant's silence as evidence of guilt. *State v. Burke*, 163 Wn.2d 204, 206, 181 P.3d 1 (2008); *see also Griffin v. California*, 380 U.S. 609, 614-15, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). That is not the only difference between civil and criminal cases. Most significantly for the case before us, the trier of fact in a civil case may draw a negative inference from a witness's invocation of the right to remain silent. As we have observed:

> The purpose of the privilege against self-incrimination is to protect the witness from compulsory disclosure of criminal liability. When a witness in a civil suit refuses to answer a question on the ground that his answer might tend to incriminate him, the result sought to be achieved by invoking the constitutional privilege is accomplished. Such refusal cannot be used against him in a subsequent criminal proceeding. However, the trier of facts in a civil case is entitled to draw an inference from his refusal to so testify.

5

*In re Dependency of A.M.F.*, No. 101270-5

*Ikeda v. Curtis*, 43 Wn.2d 449, 457-58, 261 P.2d 684 (1953); *see also Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 85, 265 P.3d 956 (2011) ("It is well settled that in civil litigation the exercise by a party of his or her Fifth Amendment privilege does not protect the invoking party from adverse inferences that may logically be drawn from its exercise." (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976))); *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 355-56, 16 P.3d 45 (2000) ("[O]nce a witness in a civil suit has invoked his or her Fifth Amendment privilege against self-incrimination, the trier of fact is entitled to draw an adverse inference from the refusal to testify." (citing *Ikeda*, 43 Wn.2d at 458)).

Here we must decide whether such an adverse inference is inappropriate in a parental rights termination case. We note that state courts have overwhelmingly found the trier of fact may draw a negative inference from a parent's assertion of the right to remain silent in similar cases. *See Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117, 357 P.3d 150 (Ct. App. 2015) ("A juvenile court's drawing a negative inference when a parent fails to testify at a severance hearing is particularly appropriate."); *Custody of Two Minors*, 396 Mass. 610, 616, 487 N.E.2d 1358 (1986) ("The unique characteristics of child custody proceedings do not require alteration or modification of the rule permitting inferences from a party's failure to testify in a civil case."); *In re C.O.*, 171 N.H. 748, 763, 203 A.3d

*In re Dependency of A.M.F.*, No. 101270-5

870 (2019) ("[W]e conclude that the circuit court may draw an adverse inference from a parent's failure to acknowledge wrongdoing where it is relevant to determining whether the parent failed to correct the conditions that led to the findings of abuse or neglect, even where the parent has invoked her right against self-incrimination."); *In re Ashley M.*, 235 A.D.2d 858, 858, 653 N.Y.S.2d 163 (1997) ("[R]espondent's failure to testify allowed Family Court to draw the strongest inferences against him as the opposing evidence permitted."). *But see N.J. Div. of Child Prot. & Permanency v. S.K.*, 456 N.J. Super. 245, 251, 193 A.3d 309 (App. Div. 2018) (disapproving of the inference when the only other evidence of parental unfitness was inadmissible hearsay). [1]

YR argues the inference was improper here because of the significant liberty interests at stake. But whether the Fifth Amendment applies does not turn on whether the liberty interests at stake are significant. By its plain terms, the Fifth Amendment applies only to criminal cases. U. S. CONST. amend V. Historically, we have considered whether additional constitutional protections beyond those

---

[1] We stress that questions posed to a witness must be designed to elicit relevant testimony. *See* ER 401, 402; *see also People v. Chatman*, 38 Cal. 4th 344, 379-80, 133 P.3d 534, 42 Cal. Rptr. 3d 621 (2006) (noting it is improper to elicit inadmissible testimony). The questions must be appropriate and, when required, lay a proper foundation. *See generally State v. Montgomery*, 163 Wn.2d 577, 591-92, 183 P.3d 267 (2008). The appropriate scope of any negative inference taken will turn on the circumstances. *See, e.g.*, *Diaz*, 165 Wn. App. at 65, 87 (holding that judge properly instructed the jury that it may take a negative inference from a party's failure to provide discovery). In this case, the foundation was laid and inference was that YR had used drugs recently, which was both relevant and detrimental to her theory of the case.

*In re Dependency of A.M.F.*, No. 101270-5

provided by statute are required in dependency and termination cases under the due process clause. *See In re Dependency of E.H.*, 191 Wn.2d 872, 894, 427 P.3d 587 (2018) (plurality opinion) (applying the due process analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine whether a child has a constitutional right to counsel in dependency proceedings); *In re Dependency of M.S.R.*, 174 Wn.2d 1, 14, 271 P.3d 234 (2012) (same). YR does not make a *Mathews* argument.

Instead, YR calls our attention to two United States Supreme Court cases that did extend the Fifth Amendment prohibition on drawing a negative inference to specific civil cases: *Garrity v. New Jersey* 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967), and *Spevack v. Klein*, 385 U.S. 511, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967) (plurality opinion). In *Garrity*, police officers were investigated for misconduct. The officers were told by investigators that they could decline to answer questions that would tend to incriminate them, but if they did, they would forfeit their jobs under a since-repealed statute that required public employees to cooperate with investigations or be fired. *Garrity*, 385 U.S. at 494-95. The officers answered the questions, and their answers were used in subsequent successful prosecutions. *Id*. at 495. The court found the statements were involuntary and reversed. *Id*. at 497-98, 500 (quoting *Miranda*, 384 U.S. at 464-65). Similarly, in *Spevack*, a majority of the Court concluded a lawyer could not

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

be disbarred merely for refusing to answer questions in a discipline hearing. 385 U.S. at 516 (lead opinion of Douglas, J.) (quoting *United States v. White*, 322 U.S. 694, 698, 64 S. Ct. 1248, 88 L. Ed. 1542 (1944)), 520 (Fortas, J., concurring in the judgment).

YR argues that "[b]ecause the deprivation of parental rights is a more serious deprivation than losing a career, it is impermissible for a court to draw an adverse inference from a parent's lawful exercise of her Fifth Amendment rights." Suppl. Br. of Pet'r Mother at 12. But nothing in *Garrity*, *Spevack*, or any other authority provided supports extending the Fifth Amendment right to remain silent to all civil cases categorically, or even to important civil cases. While *Garrity* and *Spevack* stress the importance of the right to remain silent generally, the Court has since held that *Garrity* and *Spevack* merely forbid a negative inference where the "failure to respond to interrogation was treated as a final admission of guilt," not that a negative inference is itself improper. *Baxter*, 425 U.S. at 318.

*Baxter* also reaffirmed "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause*.'" *Id*. (quoting 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2272, at 439 (John T. McNaughton rev. ed. 1961)); *see also Cabral-Avila v.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Dependency of A.M.F.*, No. 101270-5

*Immigr. & Naturalization Serv.*, 589 F.2d 957, 959 (9th Cir. 1978) (allowing negative inferences to be drawn from silence in immigration proceedings). Instead, "if [the witnesses] are compelled . . . to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'" *Baxter*, 425 U.S. at 316 (quoting *Lefkowitz*, 414 U.S. at 85).

Taken together, *Baxter*, *Spevack*, and *Garrity* establish that the Fifth Amendment does not allow the State to meet its evidentiary burden in a civil case based solely on an assertion of the right to remain silent. *Baxter*, 425 U.S. at 317-18; *Spevack*, 385 U.S. at 514; *Garrity*, 385 U.S. at 497. In this case, the trial court did not base any finding, let alone its judgment, solely on YR's silence.

YR also calls to our attention a recent intermediate court of appeals case out of New Jersey, *S.K.*, 456 N.J. Super. 245. We do not find this case helpful. In *S.K.*, a father was charged with sexually abusing his daughter. While the charges were pending, and the father was in jail, the State brought an action to determine whether the father was unfit because he had sexually abused his child. *Id.* at 250-51. The child did not testify, and the State offered only her hearsay statements to establish that the abuse had happened. *Id.* at 251. In New Jersey, a child's hearsay statement cannot be the sole basis for a finding of abuse or neglect. *Id.* at 272

10

*In re Dependency of A.M.F.*, No. 101270-5

(quoting *N.J. Div. of Youth & Fam. Servs. v. P.W.R.*, 205 N.J. 17, 32-33, 11 A.3d 844 (2011)). The court acknowledged that typically "[w]hen a party in a civil matter asserts the privilege against self-incrimination, the fact-finder may draw an adverse inference of guilt." *Id.* at 266 (citing *Attor v. Attor*, 384 N.J. Super. 154, 165-66, 894 A.2d 83 (Ct. App. Div. 2006)). But the only evidence of abuse presented was the child's hearsay and the father's silence. *Id.* at 251, 272. The *S.K.* court found it was improper to base an adverse ruling on inadmissible hearsay and silence. *Id.* at 272. That is a very different case from what we have here.

Under controlling United States Supreme Court precedent, the Fifth Amendment *does* allow the trier of fact in a civil case to make a negative inference from the assertion of the right to remain silent, unless that is the only evidence supporting an adverse action against the witness. *Baxter*, 425 U.S. at 317-18. As the trial court's judgment was not based merely on the mother's silence, the inference did not violate the Fifth Amendment.

## 2. Legal Permanency

YR also contends termination was inappropriate because the State failed to prove that continuation of her legal relationship with AMF diminished his

11

*In re Dependency of A.M.F.*, No. 101270-5

prospects for integration into a stable and permanent home or was in his best interests. We reject both arguments.

To terminate a parent's parental rights, the trial court must find by clear, cogent, and convincing evidence "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home," among other things. Former RCW 13.34.180(1)(f) (2018).[2] It must also find that termination is in the best interests of the child. RCW 13.34.190(1)(b). The trial court made these findings. YR argues both findings were in error because termination will not change AMF's placement with his grandparents.

The focus of subsection .180(1)(f) is the "continued effect of the *legal* relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources." *In re Dependency of A.C.*, 123 Wn. App. 244, 250, 98 P.3d 89 (2004). A trial court can also find subsection .180(1)(f) satisfied when the parental relationship is an impediment to a legal, permanent placement in an adoptive home. *In re Dependency of A.D.*, 193 Wn. App. 445, 458-59, 376 P.3d 1140 (2016).[3]

---

[2] After the termination order was entered in this case, the legislature amended this statute to direct courts to consider "whether a guardianship is available as a permanent option for the child." LAWS OF 2022, ch. 127, § 2(1)(f), codified at RCW 13.34.180(1)(f). YR does not argue this amendment is retroactive.

[3] The Court of Appeals has suggested that these are the only two ways to meet that element. *In re Welfare of R.H.*, 176 Wn. App. 419, 428, 309 P.3d 620 (2013) (citing *A.C.*, 123 Wn. App. at

*In re Dependency of A.M.F.*, No. 101270-5

In this case, the trial court considered the evidence and found continuing YR and AMF's relationship clearly diminished AMF's prospect for permanency because, without the termination of YR's parental rights, he would not be eligible for adoption. It also concluded that termination was in AMF's best interests as both a matter of fact and law. While the court did not elaborate, its findings suggest that the trial court believed termination was in AMF's best interests because YR was unfit and termination would allow AMF to be adopted.

Given the record before us, we find no error.

### CONCLUSION

YR has not shown the trial court erred in drawing a negative inference from her refusal to answer specific questions. Nor has she shown the trial court erred in concluding that continuing the parent-child relationship clearly diminished AMF's prospects for early integration into a stable and permanent home or that termination is in his best interests. We affirm the courts below and remand for any further proceedings necessary.

---

250; *In re Dependency of K.D.S.*, 176 Wn.2d 644, 658-59, 294 P.3d 695 (2013)). We note in passing that we have not been asked to consider whether this is an accurate statement of the law.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Dependency of A.M.F.*, No. 101270-5

González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.

14