135 P.3d 955 (2006)
133 Wash.App. 265
RWR MANAGEMENT, INC., a Washington corporation d/b/a R.W. Robideaux & Company, Respondent,
v.
CITIZENS REALTY COMPANY, a Washington corporation; Lincoln Investment Company of Spokane; RPS II, L.L.C. d/b/a River Park Square; and CPC Development, Inc., a Washington corporation d/b/a The Penney's Building, Appellants.
No. 23507-6-III.
Court of Appeals of Washington, Division 3.
May 30, 2006.
*958 Cheryl Rani Guttenbe Adamson, Diehl Randall Rettig, Attorneys at Law, Kennewick, WA, for Appellant.
Robert Allan Dunn, Dunn & Black PS, Spokane, WA, Charles Kenneth Wiggins, Wiggins & Masters PLLC, Bainbridge Island, WA, for Respondent.
BROWN, J.
¶ 1 Citizens Realty Company, Lincoln Investment Company of Spokane, RPS II, L.L.C. d/b/a River Park Square, CPC Development, Inc. d/b/a The Penney's Building (collectively RPS) appeal a $6.5 million quantum meruit judgment obtained by RWR Management Inc. d/b/a R.W. Robideaux & Co. (RWR). Although finding contracts existed, a jury rejected damages for RWR's written and oral contract claims. RPS contends the jury verdicts are inconsistent. Additionally, RPS contends instructional and evidentiary error occurred at trial. Finally, RPS contends the trial court erred in disqualifying prior counsel. We reject each contention, and affirm.

FACTS
¶ 2 RPS owns the River Park Square shopping mall and garage in downtown Spokane. RWR is a property management and consulting firm. In 1988, RWR became the managing and leasing agent for River Park Square. Robert W. Robideaux is RWR's president and principal. RPS and RWR amended their management agreement, requiring RWR to "assist Owner in redevelopment of River Park Square" and perform such duties "as directed by Owner." Ex. P-17.
¶ 3 RPS later requested Mr. Robideaux to become RPS's "right hand" and chief coordinator for the redevelopment project. Report of Proceedings (RP) at 273; Ex. P-26. RWR agreed. In 1996, the parties entered into a coordination agreement to replace all their prior written and oral agreements regarding RWR's role in the River Park Square redevelopment. This agreement was later modified by Exhibit P-107, increasing RWR's monthly compensation. The modified contract provided RPS "will at the completion of this Agreement review and determine the bonus amount to be paid to [RWR], if any, at [RPS's] sole discretion." Ex. P-107 at 4.
¶ 4 Through the years, several of the parties' agreements were memorialized by the law firm Witherspoon, Kelley, Davenport & Toole, P.S. (Witherspoon). RWR did not retain independent counsel to represent it in negotiating the agreements. Witherspoon represented RWR and Mr. Robideaux on several unrelated matters.
¶ 5 Between 1999 and 2000, the parties continued to negotiate RWR's fees relating to both its management and consulting services. In October 2002, RWR unsuccessfully requested a flat compensation fee of $550,000 for "unpaid past services and contributions" to the River Park Square project. Ex. P-155. This amount was a settlement amount; RWR actually felt it was owed between $1,009,862 and $1,725,102 in uncompensated fees.
¶ 6 Negotiations broke down, prompting RWR to sue in November 2002. RWR alleged, among other things, breach of contract and quantum meruit/unjust enrichment. RWR alleged RPS was unjustly enriched because RWR provided substantial "hours of time, services, and effort" of which it was not compensated. Clerk's Papers (CP) at 27. RPS terminated all agreements between the parties. RWR requested disqualification of RPS's counsel, Witherspoon, based on conflict of interest. Filing a memorandum opinion, the court disqualified Witherspoon. The court declined reconsideration.
¶ 7 At trial, RWR offered a letter from a potential development director asking for a development fee of six percent of total project costs. The total project costs were approximately $115 million. Mr. Robideaux testified RWR took over the development director role. Additionally, during trial, RWR submitted a damages summary, requesting $7,790,825 in specified unpaid development fees and agent/broker fees.
¶ 8 Mr. Robideaux testified he previously requested more compensation from RPS because "our company and myself, we could not *959 continue the way we were going." RP at 699-700. RWR's accountant, Gordon Budke, testified the Robideauxs and their companies "were in high financial stress." RP at 961. He further testified RWR was in "financial hurt" and its expenses were close to its incoming management fee from RPS, which limited Mr. Robideaux's salary. RP at 978.
¶ 9 The court heard argument regarding whether a proposed RPS exhibit showing Mr. and Mrs. Robideaux's sources of income from 1993 to 2002 should be admitted. RWR successfully argued the parties' prior motion in limine, dismissing the parties' individually from the lawsuit, precluded the proposed exhibit. The court ruled "none of their personal income outside of that which they have received from entities at issue here is relevant." RP at 987. This ruling precluded further cross-examination regarding the Robideauxs' personal finances.
¶ 10 During trial, the court reserved a portion of RWR's breach of contract claim relating to an alleged refusal by RPS to provide insurance coverage and indemnify RWR in previous bondholder litigation. Further, the court dismissed RWR's trespass, misappropriation, and tortuous interference claims. The court declined to give RPS's proposed Jury Instruction No. 52, providing:
Due to rulings made by the Court on a number of matters outside the presence of the jury, you are instructed not to consider, and should disregard, plaintiff's claims against defendants for:
(1) trespass to property;
(2) misappropriation of, or interference with, plaintiff's property, including prospective tenant lists;
(3) interference with plaintiff's business relationships with third parties;
(4) breach of contract for failure to provide insurance coverage for the bondholders' litigation; and
(5) breach of contract for failure to indemnify plaintiff for its time and expense associated with the bondholders' litigation.
CP at 1730-731.
¶ 11 The court instructed on the remaining claims and directed the jury to consider evidence admitted "that relates to that claim." CP at 1733 (Jury Instruction No. 1). The court instructed that if the jury finds "no enforceable oral contract between the parties" it must award RWR the reasonable value of services performed if proven by a preponderance of the evidence that RWR performed the services with RPS's knowledge and RPS knew, or should have known, RWR expected payment. CP at 1751 (Jury Instruction No. 16).
¶ 12 During deliberations, the jury inquired if it could bind RPS to future legal fees incurred by RWR regarding the bondholder litigation. The court responded, it had "reserved all issues associated with the bondholders litigation." CP at 1971.
¶ 13 The jury returned a verdict for $6.5 million in quantum meruit for RWR's uncompensated services which RPS benefited from and knew, or should have known, were performed in the expectation of payment. The jury made a special finding that RPS breached the management agreement with RWR, but awarded no damages. The jury made a special finding that RPS did not breach the coordination or modified coordination agreement relating to RWR's redevelopment services. In Question No. 5 of the special verdict form, the jury found the parties did enter into "an oral contract." CP at 1776. The jury also made a special finding in Question No. 6 of the special verdict form that RPS breached "any oral contracts" with RWR, but when asked in Question No. 7 of the special verdict form about the amount of damages, the jury again declined to award damages. CP at 1777. The special verdict form states:
If you answer Question No. 7 with any amount of money, do not answer any of the remaining questions, sign the verdict form and return it to the bailiff. If you do not answer Question No. 7, proceed to Question No. 8.
CP at 1777. Since the jury did not award any amount of money in Question No. 7, it *960 went to the next question related to RWR's request for quantum meruit damages. RPS did not formally object to the special verdict form or claim the verdicts were inconsistent prior to the court discharging the jury.
¶ 14 RPS unsuccessfully moved for a CR 50(b) motion for judgment as a matter of law and alternatively a CR 59(a) motion for a new trial. The court reasoned evidence existed sufficient for the jury to find both enforceable and unenforceable oral contracts and "[t]he development director, which was the bulk of the damages request, was not an enforceable oral contract." RP at 1479. The court concluded the jury properly made "a finding based upon quantum meruit for the function of development director." RP at 1479.
¶ 15 RPS appealed.

ANALYSIS

A. Quantum Meruit Recovery
¶ 16 The initial issue is whether the trial court erred in denying RPS's CR 50(b) motion for judgment as a matter of law and allowing quantum meruit recovery in light of allegedly inconsistent verdict forms. Alternatively, RPS assigns error to the trial court's denial of its CR 59(a) motion for a new trial based upon excessive damages.
¶ 17 Initially, RWR argues RPS's lack of objection below bars the inconsistent verdicts issue. However, RPS timely filed a post-trial motion, bringing the issue to the trial court's attention, thus satisfying RAP 2.5.
¶ 18 A CR 50(b) post-trial motion for judgment as a matter of law is limited to situations where the court can find there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. Aluminum Co. of Am. v. Aetna Cas. & Surety Co., 140 Wash.2d 517, 529, 998 P.2d 856 (2000). We interpret the evidence most strongly against the moving party and in the light most favorable to the opponent. Id. We review a CR 59(a) new trial motion ruling for abuse of discretion. Id. at 537, 998 P.2d 856.
¶ 19 "The determination of damages is peculiarly within the province of the jury, . . . and courts are reluctant to interfere." Stevens v. Gordon, 118 Wash.App. 43, 54, 74 P.3d 653 (2003). We will not disturb a jury award "unless it is outside the range of substantial evidence, shocks the conscience of the court, or was the result of passion or prejudice." Id. The trial court lacks discretion to reduce a jury's damages award if the verdict is within the range of credible evidence. Green v. McAllister, 103 Wash.App. 452, 461, 14 P.3d 795 (2000). Even when the damages are conflicting or disputed, if it can be said that the jury could "believe or disbelieve some of it and weigh all of it and remain within the range of the evidence in returning the challenged verdict, then it cannot be found as a matter of law" that the verdict was motivated by passion or prejudice. James v. Robeck, 79 Wash.2d 864, 870-71, 490 P.2d 878 (1971).
¶ 20 Quantum meruit, a Latin phrase meaning "as much as he deserves," is "based on the premise that one who uses and enjoys the labor and materials of another should not be unjustly enriched thereby." Ausler v. Ramsey, 73 Wash.App. 231, 232, 868 P.2d 877 (1994). Quantum meruit is an equitable remedy provided when a contract between two parties has failed. Id.
¶ 21 Here, the jury found enforceable, breached contracts, plus services rendered outside these contracts to justify quantum meruit damages. Because juries return inconsistent verdicts for various reasons, including mistake, compromise, and lenity, and despite the inherent discomfort surrounding inconsistent verdicts, both the United States Supreme Court and the Washington Supreme Court have held that a general or special verdict adverse to a party will not be vacated merely because it is arguably inconsistent with a general or special verdict favorable to that party. United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); State v. McNeal, 145 Wash.2d 352, 357, 37 P.3d 280 (2002).
¶ 22 Even so, a seemingly inconsistent verdict must still be supported by sufficient evidence. Sufficient evidence exists if the record contains enough evidence to persuade a rational, fair-minded person that it is *961 true. Winbun v. Moore, 143 Wash.2d 206, 213, 18 P.3d 576 (2001).
¶ 23 Commonly, changes occur between contracting parties requiring additional performance outside the contract. A contractor, for example, may recover on a quantum meruit theory when substantial changes occur not covered by the contract, and the effect of such changes is to require extra work or to cause substantial loss to the contractor at the benefit of the owner. Hensel Phelps Constr. Co. v. King County, 57 Wash.App. 170, 174, 787 P.2d 58 (1990). Thus, although a contractor is presumed to be bound by the terms to which he agreed, he cannot be presumed to have bargained away his right to claim damages resulting from changes the parties did not contemplate when making the contract. Id.
¶ 24 Similarly, RPS and RWR entered into several oral and written contracts, but multiple unanticipated changes occurred during the course of the agreed work. RWR's role significantly changed. The record shows the parties' contracted for some, but not all changes. For example, Mr. Robideaux testified to the extensive development consulting services he performed while acting as development coordinator. While RPS contends otherwise, questions of fact are left to the trier of fact and not subject to appellate review. Boeing Co. v. Heidy, 147 Wash.2d 78, 87, 51 P.3d 793 (2002) (citing Davis v. Dep't of Labor & Indus., 94 Wash.2d 119, 124, 615 P.2d 1279 (1980)). In other words, a fair-minded, reasonable person could be convinced of changes requiring extra performance outside the parties' contracts.
¶ 25 Illustratively, in Question No. 5 of the special verdict form says "an oral contract," but Question No. 6 says "any oral contracts." CP at 1776-777. And, Question No. 8 of the special verdict form asked solely, "Did Plaintiff perform services for Defendants' benefit in addition to those required by the written contracts" without additionally asking about oral contracts. CP at 1777.
¶ 26 In sum, we conclude the special verdict form, approved by both parties, permitted the jury to proceed to Question No. 8, concerning quantum meruit recovery. Sufficient evidence exists to support the jury's finding that RWR provided work outside the parties' oral and written contracts. The uncompensated additional work supports a quantum meruit award. Next, we turn to the reasonableness of the damages award.
¶ 27 We will overturn a jury verdict solely when it is clearly unsupported by substantial evidence. Burnside v. Simpson Paper Co., 123 Wash.2d 93, 107-08, 864 P.2d 937 (1994). We "will not willingly assume that the jury did not fairly and objectively consider the evidence and the contentions of the parties relative to the issues before it. The inferences to be drawn from the evidence are for the jury and not for this court." Id. (citations omitted).
¶ 28 Quantum meruit cases damages are measured by the reasonable value of the benefit conferred on the defendant. Ducolon Mech., Inc. v. Shinstine/Forness, Inc., 77 Wash.App. 707, 712, 893 P.2d 1127 (1995). The burden is on the plaintiff to prove the reasonable value of the services rendered. Eaton v. Engelcke Mfg., Inc., 37 Wash.App. 677, 682, 681 P.2d 1312 (1984).
¶ 29 RPS argues the bulk of damages requested by RWR were covered by their contracts. RWR requested over $7.7 million in damages for unpaid development fees and agent/broker fees. How the jury arrived at $6.5 million is not detailed in the special verdict form. However, the record shows substantial direct and inferential evidence supporting the jury award for unpaid fees to which they found RWR entitled by virtue of the services Mr. Robideaux performed on behalf of RWR. Further, RWR submitted evidence from another development coordinator showing six percent of total project costs as an acceptable development fee. Consequently, the quantum meruit amount is reasonable and supported by substantial evidence.

B. Proposed Jury Instruction
¶ 30 The issue is whether the trial court erred by abusing its discretion in declining to give RPS's Proposed Jury Instruction No. 52, instructing the jury to disregard several dismissed causes of action.
*962 ¶ 31 We review a trial court's decision whether to give a particular instruction for abuse of discretion. Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996). Discretion is abused when the trial court's decision rests on untenable grounds or untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). Trial court error on jury instructions is not grounds for reversal unless it is prejudicial. Stiley, 130 Wash.2d at 498-99, 925 P.2d 194 (citing Brown v. Spokane County Fire Protection Dist. No. 1, 100 Wash.2d 188, 196, 668 P.2d 571 (1983)). An error is prejudicial if it affects the outcome of the trial. Id.
¶ 32 Here, the record does not contain the court's grounds for refusing to give RPS's proposed instruction. However, the court stated the remaining instructions sufficiently "put before the jury four issues that the jury has to decide." RP at 1347. Generally, instructions are sufficient when counsel may argue their case theory based upon the instructions given, and the instructions are not misleading. Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002). Considerable discretion is allowed when tailoring instructions to fit case facts. State v. Reay, 61 Wash.App. 141, 146-47, 810 P.2d 512 (1991). The court's introductory instruction guided the jury to consider evidence relating to the individual claims and they presumably followed the court's instructions. In re Pers. Restraint of Davis, 152 Wash.2d 647, 713, 101 P.3d 1 (2004). We find no error in the court's instructions as given.
¶ 33 Even assuming the court's ruling was in error, we find no prejudice. The special verdict form made no mention of the dismissed tort claims. And, the court's response to the jury's inquiry regarding the bondholder litigation instructed the jury that the court had "reserved all issues associated with the bondholders litigation." CP at 1971. Thus, RPS cannot show the lack of its proposed instruction affected the outcome of trial.

C. Personal Finances Evidence
¶ 34 The issue is whether the trial court erred by abusing its discretion in excluding evidence regarding the Robideauxs' personal finances and concluding it was irrelevant. RPS contends Mr. Robideaux and his accountant opened the door for such evidence.
¶ 35 Our standard of review for evidentiary rulings is abuse of discretion. City of Spokane v. Neff, 152 Wash.2d 85, 91, 93 P.3d 158 (2004) (citing State v. Ellis, 136 Wash.2d 498, 504, 963 P.2d 843 (1998)). Under ER 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
¶ 36 During trial, Mr. Robideaux testified to the financial hardship of his company, inferring he and his company could not continue the way things were going. RWR's accountant, Mr. Budke, testified RWR was in "financial hurt" and "high financial stress," and its expenses were close to its incoming management fee from RPS, limiting Mr. Robideaux's salary. RP at 978; RP at 961. Such vague references do not necessarily open the door for evidence pertaining to the Robideauxs' personal financial status given their dismissal from the lawsuit. The Robideauxs' personal finances do not pertain to whether RPS received unjust enrichment from RWR. Thus, the court had tenable grounds to find evidence relating to the Robideauxs' personal finances was inappropriate and irrelevant. Therefore, the court did not abuse its discretion.

D. Counsel Disqualification
¶ 37 The final issue is whether the trial court erred in disqualifying RWR's prior counsel for conflict of interest, considering RPS's contention Witherspoon did not have an existing attorney-client relationship with RWR regarding this litigation.
¶ 38 Whether circumstances demonstrate a conflict under ethical rules is a question of law we review de novo. State v. Vicuna, 119 Wash.App. 26, 30-31, 79 P.3d 1 (2003), review denied, 152 Wash.2d 1008, 99 P.3d 896 (2004). Determining the proper resolution of this alleged conflict requires the *963 exercise of discretion, and we review the trial court's resolution for abuse of discretion. Public Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wash.2d 789, 812, 881 P.2d 1020 (1994); see also Wheat v. United States, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Denial of a reconsideration motion is reviewed for abuse of discretion. Go2Net, Inc. v. C I Host, Inc., 115 Wash.App. 73, 88, 60 P.3d 1245 (2003).
¶ 39 We consider two factors in attorney disqualification questions arising from alleged conflict of interest. Kurbitz v. Kurbitz, 77 Wash.2d 943, 947, 468 P.2d 673 (1970). First, we consider if the matters embraced within the pending suit involving an attorney's former client are substantially related to matters on which the attorney or someone in his association previously represented the former client. Id. (citing W.E. Bassett Co. v. H.C. Cook Co., 201 F.Supp. 821 (D.Conn.1961)). Second, if the attorney in the present litigation did not formerly represent the adverse client, but had access to confidential information which is material to the present suit, then the attorney should disqualify himself. Kurbitz, 77 Wash.2d at 947, 468 P.2d 673 (citing United States v. Trafficante, 328 F.2d 117 (5th Cir.1964)). Both considerations apply here.
¶ 40 In its memorandum opinion, the court reasoned RWR disclosed confidences to Witherspoon, did not hire independent counsel to represent it in the negotiations of the parties' agreements, and considered Witherspoon its attorneys. While the court announced findings in its memorandum opinion, they were based on materials presented for its consideration in an ER 104(a) preliminary fact inquiry concerning the attorney-client privilege. The court's interlocutory decision was not presented for discretionary appellate review. Consequently, we question the viability of the issue now that the matter has been tried with able counsel. RPS has presented no authority or persuasive argument that any remaining relief, under the circumstances, would include a new trial. Hence, the issue is moot. Nevertheless, the court did not abuse its discretion in disqualifying Witherspoon based upon a conflict of interest.
¶ 41 In sum, substantial evidence supports the jury's verdict in favor of RWR. Further, the trial court did not abuse its discretion in declining RPS's proposed jury instruction, precluding evidence regarding the Robideauxs' personal finances, and disqualifying RWR's prior counsel.
¶ 42 Affirmed.
WE CONCUR: SWEENEY, C.J., and SCHULTHEIS, J.