IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| R.O., by and through her mother S.H., and K.M., by and through her mother L.M., | No. 81040-5-I |
| Respondents, | |
| v. | DIVISION ONE |
| MEDALIST HOLDINGS, INC.; LEEWARD HOLDINGS, LLC; CAMARILLO HOLDINGS, LLC; JAMES LARKIN; and MICHAEL LACEY | UNPUBLISHED OPINION |
| Petitioners, | |
| DARTMOOR HOLDINGS, LLC; IC HOLDINGS, LLC; BACKPAGE.COM, LLC, UGC TECH GROUP CV; WEBSITE TECHNOLOGIES, LLC; ATLANTISCHE BEDRIJVEN CV; AMSTEL RIVER HOLDINGS, LLC; LUPINE HOLDINGS LLC; KICKAPOO RIVER INVESTMENTS LLC; CF HOLDINGS GP, LLC; CF ACQUISITIONS, LLC; CARL FERRER; CURTIS ESCALANTE; MIKEL ZACHARY WILLIAMS; MICHAEL WILLIAMS; KEYON SIMMONS; and, JOHN DOE 1-5, | |
| Defendants. | |

CHUN, J. — Traffickers exploited minors R.O. and K.M. (Minors) through advertisements on Backpage.com. The Minors sued Medalist Holdings, Inc. and others, alleging that the defendants knew about and profited from the exploitation. The trial court issued a combined order compelling discovery,

Citations and pin cites are based on the Westlaw online version of the cited material.

imposing sanctions, and disqualifying Medalist's[1] law firm, Davis Wright Tremaine, LLP (DWT). Medalist sought discretionary review of the combined order. A commissioner of this court granted discretionary review on the issues of disqualification and discovery. We affirm the disqualification order and reverse the discovery order in part.

## I. BACKGROUND

Backpage.com published advertisements of the Minors in 2014 and 2015. The Minors sued these parties for damages:

- Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, James Larkin, Michael Lacey (the petitioners in this case);

- Backpage.com, LLC, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, UGC Tech Group C.V., Website Technologies, LLC, Atlantische Bedrijven C.V., Amstel River Holdings, LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC, CF Acquisitions, LLC (collectively, Backpage Defendants); and

- Four individuals convicted of trafficking and other crimes against R.O. and K.M.

The Minors alleged that Medalist and the Backpage Defendants "knowingly created an online marketplace for sex trafficking on www.backpage.com" and "actively sanitized sex ads" to create plausible deniability and ultimately profit off the ads. During the relevant period, Medalist Holdings, Inc. was the parent company of Backpage.com, and Larkin and Lacey are the principal shareholders of Medalist Holdings, Inc.

---

[1] This opinion calls the petitioners, "Medalist."

DWT represented Medalist and the Backpage Defendants at the trial court under two joint representation agreements (JRAs) and one joint defense agreement (JDA). DWT had also represented Backpage.com in previous cases starting in 2012.[2]

On April 5, 2018, in federal criminal matters concerning trafficking on Backpage.com, Ferrer, the company's CEO, pleaded guilty to one count of conspiracy and, on behalf of Backpage.com, one count of conspiracy to commit money laundering. He and Backpage.com agreed to cooperate with the government.[3] In his personal plea, Ferrer admitted that he, Larkin, and Lacey had conspired to "knowingly facilitate the state-law prostitution crimes" and "engage in various money laundering offenses." DWT did not represent Ferrer or Backpage.com in connection with these pleas and claimed it did not know about the pleas until he entered them.

Shortly after he pleaded guilty, Ferrer notified DWT that he was withdrawing from the JRAs and JDA. DWT responded that given Ferrer's withdrawal, it would move to withdraw as counsel for the Backpage Defendants. Ferrer replied, objecting to DWT's continued representation of Medalist: "as a joint client of DWT, I do not consent to DWT's continued representation of any other person or entity other than Backpage if DWT terminates its representation."

---

[2] See, e.g., Backpage.com, LLC v. McKenna, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); Doe v. Backpage.com, LLC, 104 F. Supp. 3d 149 (D. Mass. 2015), aff'd, 817 F.3d 12 (1st Cir. 2016), cert. denied, 137 S. Ct. 622 (2017).

[3] Around the same time, the federal government brought criminal charges against petitioners Larkin and Lacey and pursued seizure and forfeiture of their bank accounts, other financial assets, and real property.

On May 1, 2018, DWT filed a notice of intent to withdraw from representing the Backpage Defendants. The Minors objected to the withdrawal. See CR 71(c)(4). The Backpage Defendants did not object.

On May 10, 2018, the Minors moved to compel compliance with the trial court's prior discovery order ("January discovery order").[4] They contended that they still had not received most of the documents that the January discovery order required the Backpage Defendants and Medalist to produce.[5] They also requested that the trial court order DWT to preserve electronic evidence and duplicate it for a third party to hold in trust.

A hearing on the motion to compel and motion to withdraw took place on May 18, 2018. During the hearing, the trial court said that it would accept an in camera submission of the JRAs and JDA to decide the withdrawal issue. The trial court continued the hearing to May 23, 2018. DWT submitted the agreements and a declaration in camera.

At the May 23 hearing, the trial court heard more argument on the issues of withdrawal, discovery, and sanctions. As to discovery, Medalist stated that it had produced some of the requested documents—it had permitted the Minors' lawyers to retain documents they had received during discovery in a similar case involving the same defendants,[6] and it had produced documents relating to

---

[4] The Minors first moved to compel discovery in January 2018, which motion the trial court granted in the January discovery order.

[5] According to Medalist, it has yet to review its documents for privilege and thus does not know exactly which documents the Minors are owed.

[6] The case was a lawsuit by a different plaintiff against the same defendants, based on similar claims. See J.S. v. Village Voice Media Holdings, LLC, 184 Wn.2d 95,

advertisements for the two Minors.  The Minors noted that, despite the production of some documents, they had yet to receive most of the documents sought.[7]

The trial court issued a ruling granting DWT's withdrawal as the Backpage Defendants' counsel, granting sanctions, and compelling discovery.  The trial court also sua sponte disqualified DWT from continuing to represent Medalist, finding that DWT's continued representation would probably "create conflicts of interest" and lead to "injustice."  The trial court noted that Ferrer had effectively revoked his prior consent to DWT's representation of Medalist because of "material changed circumstances."[8]  Finally, the trial court filed under seal the JRAs, JDA, and declaration submitted in camera.  The trial court stated that it would hold a hearing during which it would issue a written order.

At the hearing, held on June 28, after hearing arguments about the Minors' proposed order, the trial court issued a written order, which contained its rulings from the May 23 hearing on the issues of withdrawal, disqualification, sanctions, and discovery.

---

359 P.3d 714 (2015).  The documents the Minors received through the J.S. case were limited to those dated on or before December 31, 2011.

[7] The January discovery order required Medalist and the Backpage Defendants to use the same search criteria used in the J.S. case to search documents from after 2011, to cover the period when Backpage.com hosted advertisements for the Minors. These are the documents the Minors contended that they had not yet received.

[8] The trial court did not clarify at the hearing whether it was basing its ruling on only Ferrer's interests or the interests of all the Backpage Defendants.  But the court's written order reflects that the ruling stems from the interests of all the Backpage Defendants.

Medalist moved for reconsideration, which the trial court denied. Medalist then moved for discretionary review of the combined order. It also moved for a stay of the trial court proceedings, which the trial court denied.

In December 2018, a commissioner of this court partially granted discretionary review. The commissioner limited review to these issues:

> (1) whether the superior court procedurally or substantively erred in disqualifying DWT; (2) whether the superior court could impose a requirement on DWT to respond to discovery independent of its representation of the parties; and (3) whether the superior court erred in ordering DWT to turn over documents to a third party.

In granting review, the commissioner noted that the trial court probably abused its discretion by not providing DWT a meaningful opportunity to be heard before disqualification and that the ruling significantly altered the status quo. The commissioner did not express an opinion on whether the trial court erred substantively in disqualifying DWT but included the issue in the grant of review for purposes of judicial economy. The commissioner did not explicitly determine that the trial court probably erred in requiring DWT to remain involved in litigation for purposes of responding to discovery but implied such a determination by granting review under RAP 2.3(b)(2). The commissioner included within the scope of review prospective sanctions as they related to the trial court's imposition of discovery obligations on DWT. Finally, the commissioner stayed the trial court proceedings.[9]

---

[9] In December 2020, DWT withdrew as counsel for Medalist in this appeal.

## II. ANALYSIS

A. Disqualification of DWT

Medalist says that the trial court erred in disqualifying DWT because the parties had consented to potential conflicts in legally enforceable written agreements.[10] The Minors counter that Medalist's interests now conflict with the Backpage Defendants' and that Ferrer validly revoked consent. We determine that the trial court acted within its discretion in disqualifying DWT, and we need not address whether it erred procedurally.[11]

We "generally review a disqualification order for an abuse of discretion." Foss Mar. Co. v. Brandewiede, 190 Wn. App. 186, 192, 359 P.3d 905 (2015). If the trial court determines that an ethical conflict exists, it may determine the "proper resolution" of the conflict. RWR Mgmt., Inc. v. Citizens Realty Co., 133 Wn. App. 265, 279, 135 P.3d 955 (2006). A trial court abuses its discretion when

---

[10] Medalist relies on United States v. Lacey, 2018 WL 4953275 (D. Ariz. Oct. 12, 2018), which holds that the written agreements are enforceable and that Ferrer waived any right to seek disqualification of DWT. But we do not address the enforceability of the agreements. We instead decide whether Ferrer revoked consent to conflicts and whether DWT could remain as counsel following such revocation. The court in Lacey did not address these issues.

[11] As noted above, in the interest of judicial economy, the commissioner granted review of the issue whether the trial court erred substantively in disqualifying DWT and the parties also ask us to address the issue. The Minors request that in the interest of judicial economy, if we determine that the trial court erred procedurally in disqualifying DWT, we decide the issue of disqualification rather than remand the issue. Medalist agrees with the Minors "that this Court should address the parties' conflict waivers and non-disqualification agreements now." Medalist seeks a vacation of the disqualification order on substantive grounds along with a ruling that DWT may continue representing them. As both sides appear to have been fully heard on this issue, in the interest of judicial economy, we reach it. See In re Dependency of A.S., 101 Wn. App. 60, 72, 6 P.3d 11 (2000) (noting that appellate courts have the authority, under RAP 12.2, to affirm, modify, or reverse a trial court order without further proceedings "when doing so would be a useless act or a waste of judicial resources.").

it makes a decision based on untenable grounds, for untenable reasons, or applies the law incorrectly. State v. Orozco, 144 Wn. App. 17, 19–20, 186 P.3d 1078 (2008).

"A client who has given consent to a conflict may revoke the consent and, like any other client, may terminate the lawyer's representation at any time."[12] RPC 1.7 cmt. 21; see also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. f (2000). But whether doing so "precludes the lawyer from continuing to represent other clients depends on the circumstances, including the nature of the conflict, whether the client revoked consent because of a material change in circumstances, . . . and whether material detriment to the other clients or the lawyer would result." RPC 1.7 cmt. 21; see also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. f ("Whether the lawyer may continue the other representation depends on whether the client was justified in revoking the consent (such as because of a material change in the factual basis on which the client originally gave informed consent)").

Ferrer withdrew from the JRAs and JDA and revoked his consent to conflicts of interest. And on April 24, 2018, Ferrer wrote to DWT, "as a joint client

---

[12] In arguing that Ferrer may not revoke his consent, Medalist relies on this language from a reporter's note in the Third Restatement: "Courts have, however, refused to permit a client to repudiate informed consent previously given when the situation that later was said to constitute an impermissible conflict was in fact reasonably contemplated and thus within the objecting client's previous consent." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 Reporter's Note to cmt. f. But Ferrer did not repudiate the waiver, he revoked his prior consent. In other words, he did not deny the existence or enforceability of the waiver, but he withdrew from the waiver agreement. Revocation of consent is permissible according to the Third Restatement. Id. at cmt. f.

of DWT, I do not consent to DWT's continued representation of any other person or entity other than Backpage if DWT terminates its representation."

Ferrer's revocation of consent was permitted under RPC 1.7. The question is whether DWT may still represent Medalist. Ferrer's April 24 letter stating that he did not consent to DWT's continued representation of Medalist is not dispositive on this question. As Comment 21 to RPC 1.7 notes, whether a lawyer is precluded from representing other parties after one party revokes their consent "depends on the circumstances."

That DWT had been representing Medalist for years and the parties were close to trial suggests that disqualification might result in a material detriment to Medalist. Medalist presumably paid attorney fees to DWT, and expended time and effort with the firm in defending against the Minors' claims; and it provided DWT with confidential information. See RPC 1.7 cmt. 21 (the court should consider "whether material detriment to the other clients or the lawyer would result" from disqualification); see also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. f (material detriment to the other client or lawyer may occur if they "have invested time, money, and effort in the representation" or "disclosed confidential information"). And hiring new counsel would require familiarizing them with the case.

But a material change in circumstances can justify precluding a lawyer from representing a client when another client has revoked consent. Ferrer and Backpage.com's guilty pleas constituted a material change in circumstance, as noted by the trial court. See RPC 1.7 cmt. 21; see also RESTATEMENT (THIRD) OF

9

THE LAW GOVERNING LAWYERS § 122 cmt. f (noting that serious antagonism between clients can constitute a material change in circumstance). Before the guilty pleas, the Backpage Defendants' interests generally aligned with Medalist's. The parties had agreed to work together and present a common defense. But the guilty pleas created at least a potential conflict of interest between Medalist and the Backpage Defendants. For example, Medalist may now seek to shift blame onto the Backpage Defendants and deny knowledge of or involvement in the alleged wrongdoings. That Ferrer and Backpage.com agreed to cooperate with the government illustrates the divergent interests. Because the trial court determined that a potential conflict of interest existed, it had the discretion to disqualify DWT and acted within its discretion in doing so. See RWR Mgmt., 133 Wn. App. at 279 (if the trial court determines that an ethical conflict exists, it has the discretion to determine the "proper resolution" of the conflict).

B. Discovery

Medalist says that the trial court committed reversible error in entering its discovery order for three reasons. It contends first that the Minors failed to satisfy the meet and confer requirements of CR 26(i); second, that the trial court may not impose discovery obligations directly on lawyers; and, third, that the trial court may not direct the lawyers to produce documents to a third party in trust. We do not reach the first issue, which falls beyond the scope of discretionary review. Second, we conclude that the trial court erred in imposing discovery

obligations directly on counsel. And we do not reach the third issue given our resolution of the second issue.

1. Meet and confer

Medalist says that the Minors failed to satisfy the meet and confer requirements of CR 26(i) and therefore, the trial court could not rule on the motion to compel discovery. The Minors respond that this issue falls outside the scope of discretionary review and thus we should not address it. We agree with the Minors.

"Upon accepting discretionary review, the appellate court may specify the issue or issues as to which review is granted." RAP 2.3(e). The ruling granting discretionary review limited the discovery issues to the following:

> (2) whether the superior court could impose a requirement on DWT to respond to discovery independent of its representation of the parties; and (3) whether the superior court erred in ordering DWT to turn over documents to a third party.

It did not include the question of whether the Minors satisfied the meet and confer requirements of CR 26(i). And indeed, Medalist omitted the issue from its motion for discretionary review. We thus decline to address it. See State v. Brooks, 2 Wn. App. 2d 371, 409 P.3d 1072 (2018), (limiting its decision to the issues discussed in the commissioner's ruling, despite appellant addressing more issues in its briefs).

2. Discovery obligations imposed on lawyers

Medalist says that the trial court can impose discovery obligations on only parties, not lawyers, under CR 34. The Minors counter that the trial court did not

impose discovery obligations on DWT, and even if it did, such an order is permitted. But the trial court did order DWT to duplicate two terabytes of data and give it to a third party. We conclude that because a court cannot impose discovery obligations on a lawyer, the trial court erred in this regard.[13]

We review "a trial court's discovery order for an abuse of discretion." T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423, 138 P.3d 1053 (2006). Similarly, we review sanctions for noncompliance with discovery orders for abuse of discretion. In re Det. of Young, 163 Wn.2d 684, 694, 185 P.3d 1180 (2008). A trial court abuses its discretion when its decision "was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Id. But review is de novo when an issue involves the interpretation of a civil rule. Young v. Thomas, 193 Wn. App. 427, 435, 378 P.3d 183 (2016).

CR 34(a)(1) provides that "[a]ny party may serve on any other party" a discovery request for "items in the responding party's possession, custody, or control." Control is defined as "the legal right to obtain the documents requested upon demand." Diaz v. Washington State Migrant Council, 165 Wn. App. 59, 78, 265 P.3d 956 (2011) (quoting Searock v. Stripling, 736 F.2d 650, 653 (11th

---

[13] The commissioner relatedly granted review of "whether the superior court can require DWT to remain involved in the litigation for a limited purpose, which necessarily includes the 1.2 million document production, after it disqualified DWT under the RPCs." But the trial court did not so order. The trial court imposed the obligation to produce the 1.2 million documents only on the "Backpage Corporate Defendants." Also, Medalist did not adequately brief this issue. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that inadequately briefed arguments are waived). We decline to address it. See State v. LG Elecs., Inc., 185 Wn. App. 123, 151–52, 340 P.3d 915 (2014), aff'd, 186 Wn.2d 1, 375 P.3d 636 (2016) (acknowledging an appellate court's discretion to review issues despite a commissioner's grant of review).

Cir.1984)). If a party flouts discovery, CR 37(a)(2) permits the party seeking discovery to move to compel it. If a trial court grants such a motion, the court requires "the party . . . whose conduct necessitated the motion or the . . . attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred." CR 37(a)(4). And the court may impose sanctions on a "party failing to obey the order or the attorney advising him or her." CR 37(b)(2). Otherwise, nothing in the civil discovery rules suggests that a court may impose discovery obligations on a party's counsel; nor do the Minors cite any law to support such a position.[14]

The parties disagree about which obligations are directed at DWT. Only one provision of the trial court's discovery order is imposed directly on DWT. That provision orders the Backpage and Medalist defendants and DWT to:

> secure and continue to preserve all electronic evidence in their possession, including the two terabytes of data that Davis Wright Tremaine previously identified . . . Defendants and Davis Wright Tremaine shall also duplicate the 2 terabytes of data and place it in trust with a neutral third party approved by the Court, within 60 days.

---

[14] It bears mentioning here that parties maintain control over their documents in the possession of their lawyers. Diaz, 165 Wn. App. at 78 (control is "'the legal right to obtain the documents requested upon demand'" (quoting Searock, 736 F.2d at 653)). Thus, when a court orders such a party to produce documents, materials in their counsel's possession are subject to such an order. And upon termination of the attorney-client relationship, lawyers must return their former client's "papers and property to which the client is entitled." RPC 1.16; see also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 46 cmt. b (2000) ("A lawyer's duty to safeguard client documents does not end with the representation.").

The rest of the discovery order imposes obligations on only the "Backpage Corporate Defendants,"[15] not on DWT. The trial court erred by imposing the obligation to duplicate the two terabytes of data directly on DWT.[16]

Because we reverse the portion of the discovery order about the two terabytes of data, we do not address the third issue—whether a trial court can require a lawyer to turn over materials to a third party in trust.

We affirm in part and reverse in part.

_Chun, J._

WE CONCUR:

_[signature]_                    _Dwyer, J._

---

[15] By saying the "Backpage Corporate Defendants," the trial court was referring to Medalist and the Backpage Defendants, excluding Larkin, Lacey, and Ferrer.

[16] Relatedly, the commissioner said in the ruling granting review that:

> review of the issue whether the superior court erred in imposing (prospective) sanctions for discovery-related obligations is warranted because it is related to whether the superior court properly disqualified DWT and whether, if the superior court properly disqualified DWT, it could require DWT to remain actively involved in the document production under the threat of imposing significant sanctions on Medalist.

As mentioned above, the court did not require DWT to remain involved in document production. The court imposed the document production obligations solely on the "Backpage Corporate Defendants." Because the court did not "require DWT to remain actively involved in document production" to begin with, it follows that it did not do so under threat of prospective sanctions. We do not reach the issue of sanctions. See LG Elecs., Inc., 185 Wn. App. at 151–52 (acknowledging an appellate court's discretion to review issues notwithstanding a commissioner's grant of review).