**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

February 14, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FRANK WILLIAMS, | No. 56240-5-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |
| Respondent. | |

Respondent, the Department of Social and Health Services, filed a motion to publish this court's opinion filed on October 25, 2022. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. Lee, Cruser, Veljacic

LEE, JUDGE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| FRANK WILLIAMS, | No. 56240-5-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Frank Williams sued the Department of Social and Health Services (DSHS), alleging age and race discrimination under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Williams appeals the trial court's order granting CR 50 judgment as a matter of law for DSHS after Williams presented his case-in-chief at trial. Williams argues that the trial court erred by granting DSHS's motion to quash a notice for the secretary of DSHS to attend trial and by granting DSHS's CR 50 motion for judgment as a matter of law. Williams also argues that he is entitled to attorney fees and costs on appeal should he ultimately prevail on remand.

We hold that the trial court did not err by granting DSHS's motion to quash the notice for the secretary of DSHS to attend trial or by granting DSHS's CR 50 motion for judgment as a matter of law. Accordingly, we affirm the trial court's order granting judgment as a matter of law for DSHS. We also deny Williams' request for appellate attorney fees and costs.

No. 56240-5-II

FACTS

Williams worked for Western State Hospital (WSH)[1] as an institutional counselor. Williams applied for one of 28 open ward program administrator positions at WSH. Williams did not receive an interview because his application was rejected after an initial screening of all applications.

Williams sued DSHS, alleging age and race discrimination under the WLAD. Williams also alleged that DSHS refused to hire him in retaliation for a lawsuit he had previously initiated against DSHS complaining of unfair and discriminatory hiring practices. DSHS generally denied the allegations.

DSHS moved for summary judgment on all claims. The trial court granted summary judgment to DSHS on the retaliation claim but denied summary judgment as to the race and age discrimination claims, which went to trial.

A.    MOTION TO QUASH

Prior to trial, Williams' counsel deposed Cheryl Strange, the secretary of DSHS. At the deposition, Williams' counsel asked Secretary Strange about the creation of the ward program administrator positions. Secretary Strange explained that the ward program administrator positions were created as part of a systems improvement agreement to prevent WSH from being decertified. Secretary Strange testified that the only role she had in the creation of the ward program administrator position description was in signing the form. Secretary Strange also

---

[1] DSHS operates WSH.

2

No. 56240-5-II

testified that she did not recall specifics about recruitment for the ward program administrator positions, but it was likely that she received updates about how many positions were filled.

Williams' counsel asked Secretary Strange about her interactions with Williams. Secretary Strange testified that she parked next to Williams and chatted casually with Williams several times. Secretary Strange observed Williams leading a community meeting and was "very impressed" with Williams and his client interactions. Clerk's Papers (CP) at 73. Secretary Strange thought Williams would be a great ward program administrator and wondered if that was possible. However, Secretary Strange did not know Williams' credentials or qualifications for the position. Secretary Strange reached out to Dr. Marylouise Jones, WSH's chief clinical officer, to bring Williams to Dr. Jones' attention and to have Dr. Jones notify Williams about the ward program administrator positions. Secretary Strange testified that she did not remember having any further conversations with Dr. Jones about Williams. Secretary Strange also did not recall whether Williams applied for the position.

Williams served a CR 43(f)[2] notice for Secretary Strange to attend trial, and DSHS moved to quash the notice. At the hearing on the motion to quash, DSHS argued that Secretary Strange's testimony was not relevant to Williams' claims. DSHS also argued that Secretary Strange had a busy schedule, that she would have to prepare to testify, and that she would have to find a suitable place to testify while DSHS was still under COVID-19 lockdown. Williams' counsel agreed that Secretary Strange was not a decision-maker in the ward program administrator hiring process.

---

[2] CR 43(f)(1) provides that parties or managing agents of parties may be examined at the instance of any adverse party. The witness' attendance may be compelled solely by notice in lieu of a subpoena. CR 43(f)(1).

3

No. 56240-5-II

The trial court noted that Secretary Strange had "fairly limited relevance, although she may have some factual knowledge." 1 Verbatim Report of Proceedings (VRP) (Mar. 26, 2021) at 14. The trial court also noted that it was trying to understand "what's reasonable" and understood that Secretary Strange had a lot of responsibility, and there was precedent for protecting high-level government officials from being dragged into litigation simply because of their positions. 1 VRP (Mar. 26, 2021) at 14. At the end of the hearing, the trial court stated that it did not think there was any factual dispute that Secretary Strange suggested that Williams apply and was later copied on an email encouraging him to apply for the ward program administrator position. The trial court provisionally granted DSHS's motion to quash but stated that it would revisit the motion during the trial if Secretary Strange's testimony became relevant. Williams did not raise the issue again, so the trial court did not revisit the issue.

B.    TRIAL

Williams presented his case-in-chief at a jury trial. Williams and his wife both testified. Williams called Lindsey White as a witness, who worked in talent acquisition for DSHS. Williams also called an individual who applied and was hired for one of the ward program administrator positions. Portions of both Secretary Strange's and Dr. Jones' depositions were published and read aloud for the jury. The testimony and admitted exhibits provided the following facts.

Williams started working at WSH in 1998. Williams worked in different positions throughout his time at WSH and was working as a licensed institutional counselor in 2016. Williams never had a supervisory position at WSH.

No. 56240-5-II

In September 2016, DSHS sought to fill 28 open positions for ward program administrator. The position description stated that ward program administrator was a supervisory position. The position description listed the following as requirements:

> A Master's degree in Psychology, Sociology, Social Work, Social Sciences, Nursing, or in an allied field, AND three years of professional experience in case work, social services, planning, directing, and/or coordinating group and activities in an institution setting or experience in a related field AND three years of supervisory and/or managerial experience, including program administration, personnel management, and budgeting.
> OR
> A Bachelor's degree in Psychology, Sociology, Social Work, Social Sciences, Nursing, or in an allied field, AND three years of professional experience in case work, social services, planning, directing, and/or coordinating group and activities in an institution setting or experience in a related field AND five years of supervisory and/or managerial experience, including program administration, personnel management, and budgeting.

Ex. 17 at 5.

Secretary Strange parked next to Williams at work and chatted casually with Williams several times. Secretary Strange observed Williams leading a community meeting and was "very impressed" with Williams and his client interactions. Ex. 58 at 7. Secretary Strange thought Williams would be a great ward program administrator and told Dr. Jones to explore that possibility.

In September 2016, Dr. Jones emailed Williams telling him that Secretary Strange had spoken with him a few months before. Dr. Jones' email stated that Secretary Strange had indicated to her that Williams "had a number of very good ideas about the direction of the hospital as well as a wealth of knowledge from having been part of WSH for so long." Ex. 3 at 1. Dr. Jones sent Williams the link to apply for a ward program administrator position and "encourage[d] [him] to

5

No. 56240-5-II

apply if [his] skills and interests match with this position." Ex. 3 at 1. Dr. Jones copied Secretary

Strange on this email.

Williams applied for the ward program administrator position. At the time of his

application, Williams was approximately 73 years old.[3] Williams' cover letter stated that he had

"over twenty-five years of supervisory skills, team building, and influencing men and women to

work in a cohesive manner with each other to accomplish the job." Ex. 2 at 1. Williams' resume

listed the following as employment history:

- SECURITY OFFICER-TACOMA, WA.                    1990-1990
  Provided security in and out of the library and parking lot

- IMMIGRATION SERVICE-SEATTLE, WA.                    1990-1998
  Shift Lieutenant; responsible for reports and security of all Immigrant during
  my shift

- WESTERN STATE HOSPITAL- LAKEWOOD, WA.         1998-Pres[ent]
  Facilitator; for groups in the Adult Therapy Program (ATP)

Ex. 2 at 2. Williams' resume listed the following as experience:

- US ARMY 1SG SERGEANT                    1964-1990
- US IMMIGRATION SERVICE SHIFT LIEUTENANT            1990-1998
- TRAINING IN LEADERSHIP QUALITIES
- LICENSED COUNSELOR

Ex. 2 at 2. Although not stated in his application, Williams testified at trial that he supervised

people during his time in the U.S. Army and during his time as a lieutenant.

WSH received 169 applications for the 28 ward program administrator positions. White

sent all applications to Dr. Jones. Dr. Jones and Joyce Stockwell, another WSH employee, were

the only individuals who did the initial screening of all the application materials, including

---

[3] Williams was born in 1944.

6

No. 56240-5-II

Williams'.[4] Dr. Jones did not work directly with Williams, but she knew who Williams was. Dr. Jones was aware that Williams "looked African-American" and believed that Williams was somewhere between 40 and 60 years old. Ex. 56 at 19.

On October 26, after Dr. Jones and Stockwell did the initial screening of all applications, DSHS emailed Williams informing him that the hiring team had chosen to move forward with other applicants in the hiring process. Williams did not receive an interview for the ward program administrator positions. Dr. Jones and Stockwell had screened out 109 applicants during their initial screening.

DSHS stated in an interrogatory response that the reason Williams was not selected for an interview was because his resume "did not exhibit the management or supervisory experience, qualifications sought by the defendant for positions in question." 4 VRP (June 7, 2021) at 27. Dr. Jones stated in a deposition excerpt that was read to the jury that she believed Williams did not meet the minimum qualifications to receive an interview because

> even like he referenced in his cover letter that he had 25 years of supervisory . . . skills, it actually did not match what was described in the resume. There was no description in the resume about, for instance, how many people he had provided supervision, how he ran a department. There was nothing really to fill out kind of that.
>
> So it wasn't easy to see on his . . . resume that he did have supervisory skills that would be a good fit for this position.

Ex. 56 at 21. Dr. Jones also stated that she did not know what scope of supervision a "lieutenant" might have, if any.

---

[4] Stockwell was not deposed and did not testify at trial.

No. 56240-5-II

Because DSHS had not yet filled all vacancies for the ward program administrator positions in December 2016, White sent an email to Dr. Jones asking if she wanted to look again at the 109 applicants that had been rejected. Dr. Jones said it would be better to avoid reviewing the applications that were already rejected and asked if they could repost the positions. According to White, it was "not uncommon" to decide not to review applications that had already been rejected. 4 VRP (June 7, 2021) at 15. White reposted the positions at least three times after 2016.

A document listing 25 of the people ultimately hired as ward program administrators showed that 18 were white, 6 were Black, and 1 was American Indian/Alaskan Native. The document also showed that, in 2016, 2 individuals were in their 20s, 7 or 8 individuals were in their 30s, 10 or 11 individuals were in their 40s, 3 individuals were in their 50s, and 2 individuals were in their 60s.[5] All but 1 of the individuals listed in the document submitted applications that provided some detail about their supervisory and/or management experience. The other individual's application is not included in the record and is not listed as an admitted exhibit.

C.    JUDGMENT AS A MATTER OF LAW

At the conclusion of Williams' case-in-chief, DSHS moved for a directed verdict (judgment as a matter of law) under CR 50. DSHS argued that Williams had presented insufficient evidence that his race or age was a substantially motivating factor for him being screened from hiring. DSHS argued that Williams did not provide any evidence that Dr. Jones or Stockwell knew the races of the individuals who were eventually hired, so the successful applicants could not be used as circumstantial evidence of discrimination. DSHS also argued that the resumes from

---

[5] This document showed 9 people younger than 40, 15 people older than 40, and 1 person who was around 40 at the time of hire.

8

No. 56240-5-II

successful applicants were highly detailed about supervisory/management experience, while Williams' resume did not show any supervisory experience.

Williams argued that DSHS's motion should not be granted because Dr. Jones knew Williams' age and race. Williams also argued that some successful applicants had fewer than three years of supervisory experience or lacked other qualifications for the position.

The trial court noted that the successful applicants' resumes were "highly detailed with all of their experience and an explanation for the skills that they have, which [Williams'] resumé lacked. [Williams'] resumé didn't have any explanations on it whatsoever." 6 VRP (June 8, 2021) at 13. The trial court compared Williams' resume, which "[did] not provide any real understanding or explanation of any supervisory experience that he may have, supervisory or managerial" to the resumes of people who were interviewed. 6 VRP (June 8, 2021) at 25. From this comparison, the trial court concluded that "there's just simply no evidence from which a jury can conclude that the reason that [Williams] was denied an interview was because of his race or his age." 6 VRP (June 8, 2021) at 25. The trial court also stated that there was "a fundamental problem with damages as well, in that the jury would be forced to speculate as to whether [Williams] would have been selected for a position." 6 VRP (June 8, 2021) at 25. For these reasons, the trial court granted DSHS's CR 50 motion for judgment as a matter of law in favor of DSHS and dismissed Williams' suit.

Williams appeals.

9

No. 56240-5-II

ANALYSIS

A.    MOTION TO QUASH

Williams argues that the trial court erred by granting DSHS's motion to quash the CR 43(f) notice for Secretary Strange to attend trial. We disagree.

CR 43(f)(1) provides that a party or the managing agent of a party may be examined by the adverse party, and the witness' attendance may be compelled by a trial notice. The witness shall not be precluded from testifying at trial based on the fact that the adverse party has already taken their deposition. CR 43(f)(2). However, trial courts may make protection orders for the witness if there is good cause shown under CR 26(c). CR 43(f)(1).

There is no relevant published case law regarding CR 43(f) notices to attend trial. Therefore, we rely on case law discussing CR 26 because CR 43(f) provides for protection orders for good cause shown under CR 26(c). We review orders under CR 26 for an abuse of discretion. *Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 73, 265 P.3d 956 (2011). We will find an abuse of discretion only upon a clear showing that the trial court's exercise of discretion was manifestly unreasonable or based on untenable grounds or for untenable reasons. *Id.*

CR 26(c) provides that the party or person from whom discovery is sought can bring a motion for a protective order. If the person shows good cause, the trial court may make any protective order which justice requires to protect the person from annoyance, embarrassment, oppression, or undue burden or expense, including that the discovery not be had. CR 26(c). "To establish good cause, the party should show specific prejudice or harm will result if no protective order is issued." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 423, 204 P.3d 944, *review denied*, 166 Wn.2d 1037 (2009). The party should use affidavits and concrete

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56240-5-II

examples to demonstrate the specific harm that will be suffered; "broad or conclusory allegations of potential harm may not be enough." *Id.* A trial court must weigh the respective interests of the parties in exercising its discretion to issue a protective order under CR 26(c). *Id.*

Williams implies that the trial court quashed the notice for Secretary Strange to attend trial based solely on the fact that Williams had already taken her deposition. But none of the trial court's statements suggest that the trial court's decision to quash the trial notice was based on the fact that Williams had already taken Secretary Strange's deposition.

Instead, the record shows that trial court made its decision based largely on the "fairly limited" relevance of Secretary Strange's testimony to Williams' claims. 1 VRP (Mar. 26, 2021) at 14. At the hearing on the motion to quash, Williams' counsel agreed that Secretary Strange was not a decision-maker in the hiring process for the ward program administrator positions. Further, Secretary Strange did not recall having any involvement in the hiring process aside from receiving occasional updates about how many spots had been filled.

While Secretary Strange had seen Williams performing his job as an institutional counselor and wanted him to consider applying for the ward program administrator position, she did not recall if Williams ultimately applied for a ward program administrator position. Nor did Secretary Strange have any knowledge of Williams' credentials or qualifications for the ward program administrator position.

The trial court weighed the limited relevance of Secretary Strange's testimony against Secretary Strange's responsibilities as a high-level government official and "look[ed] at what's reasonable." 1 VRP (Mar. 26, 2021) at 14. The trial court heard DSHS's arguments regarding Secretary Strange's inherent time constraints as the head of DSHS, the time requirement for

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56240-5-II

Secretary Strange to prepare her testimony, and the fact that Secretary Strange would be required to find a suitable place to testify while DSHS was under COVID-19 lockdown. The trial court came to the conclusion that the motion to quash should be provisionally granted and left open the possibility of revisiting the motion during trial if Secretary Strange's testimony became relevant. There is no record that any party sought to have the trial court's provisional order revisited. Given the burden on Secretary Strange and the fact that her testimony would not be relevant to Williams' claims based on his application being rejected after the initial screening during the hiring process, the trial court's decision was not manifestly unreasonable nor was it based on untenable grounds. *See McCallum*, 149 Wn. App. at 423. Therefore, the trial court did not abuse its discretion by granting DSHS's motion to quash. *See Diaz*, 165 Wn. App. at 73.[6]

---

[6] Even if we assume that that the trial court abused its discretion by quashing the notice for Secretary Strange to attend trial, the trial court's decision is generally subject to harmless error analysis. *Jones v. City of Seattle*, 179 Wn.2d 322, 356, 314 P.3d 380 (2013). We review non-constitutional errors for whether there is any reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. *Budd v. Kaiser Gypsum Co.*, 21 Wn. App. 2d 56, 88, 505 P.3d 120, *review denied*, 199 Wn.2d 1030 (2022).

Had Secretary Strange testified, she would not have been able to provide any details about how the screening decisions were made because she was not one of the decision-makers in the hiring process. Moreover, Secretary Strange did not recall any involvement in the hiring process aside from receiving updates about how many positions had been filled. Further, the trial court allowed Williams to publish much of Secretary Strange's deposition for the jury. Because Secretary Strange could not have provided details about the hiring process and because her deposition was published at trial, Williams has failed to show that the outcome of the trial would have been materially affected had the trial court denied DSHS's motion to quash. *See id.* Therefore, any error by the trial court in granting DSHS's motion to quash was harmless.

12

No. 56240-5-II

B.      CR 50: JUDGMENT AS A MATTER OF LAW

Williams argues that the trial court erred by granting DSHS's CR 50 motion for judgment as a matter of law.[7] We disagree.

We review a trial court's CR 50 decision de novo. *Mancini v. City of Tacoma*, 196 Wn.2d 864, 877, 479 P.3d 656 (2021). Trial courts should grant CR 50 motions "only when a party has been fully heard on an issue and 'there is no legally sufficient evidentiary basis for a reasonable jury to find or have found' for that party on that issue." *Id.* at 876-77 (quoting CR 50(a)(1)). A CR 50 motion is properly granted when, "'viewing the evidence in the light most favorable to the nonmoving party, there is no substantial evidence or reasonable inferences therefrom to support a verdict for the nonmoving party.'" *Id.* at 877 (quoting *H.B.H. v. State*, 192 Wn.2d 154, 162, 429 P.3d 484 (2018)). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the declared premise is true. *Id.* We may affirm the trial court's decision on any ground that is supported by the record. *Id.*

The WLAD was designed to eliminate and prevent workplace discrimination. RCW 49.60.010; *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 441, 334 P.3d 541 (2014). We construe the WLAD liberally. RCW 49.60.020. The WLAD prohibits employers from refusing to hire any person on the basis of age or race, among other bases. RCW 49.60.180(1). The protected class for age discrimination is individuals above the age of 40. RCW 49.60.205; RCW 49.44.090(1).

---

[7] Williams appears to claim in his opening brief that the trial court "perpetuated discriminatory stereotypes" by granting judgment as a matter of law for DSHS. Br. of Appellant at 25. DSHS responds to this argument as though Williams is making a separate claim against the trial court. However, Williams makes clear in his reply brief that he is not claiming the trial court was biased; rather, Williams is claiming that "[t]he court erred by blocking the jury from deciding [Williams'] claims." Reply Br. of Appellant at 29.

13

No. 56240-5-II

If a plaintiff lacks direct evidence of discrimination, we evaluate WLAD claims using the three-prong burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Scrivener*, 181 Wn.2d at 445. Under the first *McDonnell Douglas* prong, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a presumption that discrimination occurred. *Id*. at 446. The second *McDonnell Douglas* prong shifts the burden to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. If the employer meets its burden, the third *McDonnell Douglas* prong requires the plaintiff to produce sufficient evidence that the employer's alleged nondiscriminatory reason for the employment action was pretextual. *Id*.[8]

1.      Williams' Prima Facie Case Of Discrimination

Under the first *McDonnell Douglas* prong, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a presumption that discrimination occurred. *Id*. An employee makes a prima facie case of discrimination by showing that (1) he is part of the protected class; (2) "he applied and was qualified for a job for which the employer was seeking applicants"; (3) "despite his qualifications, he was rejected"; and (4) after his rejection, the position remained open and the employer continued to seek applications from other individuals with the plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802.

---

[8] Generally, if an employee makes a prima facie case of employment discrimination and produces evidence showing that the employer's asserted nondiscriminatory justification was pretextual, the evidence is sufficient to submit to the jury. *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 448, 115 P.3d 1065 (2005), *review denied*, 156 Wn.2d 1027 (2006). "But even in this situation, an employer will still be entitled to judgment as a matter of law if no rational trier of fact could conclude that discrimination was a substantial factor in the employer's action." *Id*.

No. 56240-5-II

Washington courts look to federal case law interpreting antidiscrimination statutes as a guide to interpreting the WLAD. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014). While federal cases are not binding on this court, we are "'free to adopt those theories and rationale which best further the purposes and mandates of our state statute.'" *Id.* (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988)). Federal courts focus on the actual knowledge and actions of the decision-maker when evaluating employment discrimination claims. *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002). We apply the federal courts' guidance and require employees to show that the decision-maker knew about their qualifications at the time of the adverse decision.

Here, Williams was over 40 years old at the time he applied for the ward program administrator position, and no one contests that Williams was part of the protected class for both his age and his race. Williams has shown that DSHS was seeking applicants for the ward program administrator positions, Williams applied for the position, and he was rejected. Williams also produced evidence that some ward program administrator positions remained open and that DSHS continued to seek applications from other individuals with the same qualifications.

However, Williams failed to present any evidence that DSHS knew he possessed the required supervisory/management experience for the position. Williams never had a supervisory or managerial position at WSH, so there was no reason for DSHS to know that he had supervisory or managerial experience unless he provided that information in his application/resume. Williams' resume was devoid of any details about most of his previous positions, and Williams' job titles or descriptions in his resume did not show that he had any experience as a supervisor or manager. A single phrase in Williams' cover letter stated that he had "over twenty-five years of supervisory

15

No. 56240-5-II

*skills*, team building, and influencing men and women to work in a cohesive manner with each other to accomplish the job," but that statement does not convey that he possessed the "supervisory and/or managerial *experience*, including program administration, personnel management, and budgeting" sought by DSHS. Ex. 2 at 1; Ex. 17 at 5 (emphases added).

Even considering Williams' application in the light most favorable to him, no fair-minded, rational person could be convinced that Williams' application/resume showed that he met the supervisory/management requirement for the position or that DSHS knew or was informed that Williams had the requisite supervisory/management experience for the position. *See Mancini*, 196 Wn.2d at 877. Therefore, Williams has failed to make a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Walker*, 286 F.3d at 1274.

2.      No Evidence Of Pretext In Williams' Case-In-Chief

If the employer provides a legitimate nondiscriminatory reason for its decision,[9] the third *McDonnell Douglas* prong requires the plaintiff to produce sufficient evidence to show that the employer's alleged nondiscriminatory reason was pretextual. *Scrivener*, 181 Wn.2d at 446. An employee shows that an employer's alleged reason is a pretext if the proffered justification has no basis in fact, is an unreasonable ground upon which to base the decision, or was not a motivating factor in employment decisions for other similarly-situated individuals. *Griffith v. Schnitzer Steel*

---

[9] The second *McDonnell Douglas* prong shifts the burden to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Scrivener*, 181 Wn.2d at 446. Williams presented evidence that DSHS asserted Williams was not selected for an interview because his resume did not exhibit the management or supervisory experience required for the position. This proffered justification—lack of minimum supervisory/managerial qualifications—is legitimate and nondiscriminatory. Therefore, evidence showing the second *McDonnell Douglas* prong was presented in Williams' case-in-chief.

16

No. 56240-5-II

*Indus., Inc.*, 128 Wn. App. 438, 447, 115 P.3d 1065 (2005), *review denied*, 156 Wn.2d 1027 (2006). An employee can also satisfy the pretext prong by showing "'that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer.'" *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 527, 404 P.3d 464 (2017) (quoting *Scrivener*, 181 Wn.2d at 446-47).

Here, DSHS's proffered justification was that Williams' resume did not show that he had the supervisory experience required for the position. Williams did not present evidence in his case-in-chief that DSHS's proffered justification has no basis in fact. And Williams does not argue that lack of supervisory experience is an unreasonable ground upon which to deny his application.

Instead, Williams attempts to show pretext by arguing that the lack of supervisory experience was not a motivating factor in DSHS's employment decisions for other similarly-situated individuals. But the applicants who were ultimately hired for a ward program administrator position communicated in their applications that they had supervisory or managerial experience and provided details about their experience in their resumes.[10] And Williams did not

---

[10] Williams contends that certain successful applicants did not submit applications that showed their supervisory or managerial experience. The record belies this contention. For example, Williams asserts that Danielle Strassle, Enos Mbajah, Mario Williams-Sweet, William Woehl, and Shikha Gapsch (formerly Hoelscher) did not meet the minimum supervisory qualifications.

Strassle's application showed experience as a therapies supervisor in which they were responsible for program development, administration, and supervising ten employees.

Mbajah's application mentioned experience "supervising both clinical (Therapist and bachelors level clinicians) and non-clinical (behavior support specialists, family support specialists and peer mentors)." Ex. 38 at 3. Further, Mbajah's most recent position on their resume was "Clinical Supervisor" and listed several bullet points with details about supervisory job responsibilities. Ex. 38 at 4 (emphasis omitted).

17

No. 56240-5-II

present any evidence beyond these comparators that his age or race was a substantial factor motivating DSHS to reject his application.[11]  Therefore, Williams failed to present any evidence in his case-in-chief that DSHS's proffered justification was pretextual.  Accordingly, we affirm the trial court's order granting CR 50 judgment as a matter of law for DSHS.[12]

---

Williams-Sweet's application listed experience as a program manager in which they "[p]rovide[d] professional oversight and guidance of behavioral support services."  Ex. 53 at 3. Further, Williams-Sweet listed a previous position as "Residential Supervisor" and listed the position's duties as supervising, training, monitoring, and assisting five residential counselors.  Ex. 53 at 4 (emphasis omitted).

Woehl's application listed one previous position with the job title "Licensed Therapist / Manager" in which they supervised two individuals.  Ex. 54 at 1.

Gapsch was hired in mid-2019, nearly three years after Williams applied.  Further, Gapsch's resume listed experience leading projects and developing trainings to improve retention and recruitment of foster homes, training and mentoring CPS specialists, leading student organizations, and "[e]xperience supervising colleagues in a fast-paced environment."  Ex. 32 at 3.

[11] Williams argues at several points throughout his briefing that certain successful applicants did not have health care experience, had a criminal record, or lacked other qualifications for the position.  But health care experience was not a requirement for the position, and the other qualifications are irrelevant to DSHS's proffered justification—lack of supervisory/managerial experience.  Therefore, the applicants' other qualifications and backgrounds cannot show that DSHS's proffered justification was pretextual.

[12] DSHS makes several alternative arguments for why we should affirm the trial court's order granting CR 50 judgment as a matter law.  Because we affirm the trial court's CR 50 order based on the fact that Williams failed to meet his burden under the first and third prongs of *McDonnell Douglas*, we do not address DSHS's alternative arguments.

No. 56240-5-II

ATTORNEY FEES ON APPEAL

Williams argues that under RCW 49.60.030(2),[13] he is entitled to attorney fees and costs on appeal should he ultimately prevail on remand. We affirm the trial court's order granting judgment as a matter of law for DSHS, which precludes the possibility of Williams prevailing on remand. Therefore, we deny Williams' request for attorney fees and costs on appeal.

CONCLUSION

The trial court did not err in granting DSHS's motion to quash the notice for the secretary of DSHS to attend trial nor did the trial court err in granting DSHS's CR 50 motion for judgment as a matter of law. Accordingly, we affirm the trial court and deny Williams' request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Veljacic, J.

---

[13] RCW 49.60.030(2) provides in relevant part that a person claiming injuries under the WLAD may seek to recover the cost of suit including reasonable attorney fees.